Filed 10/30/24  P. v. Santana CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER KEVIN SANTANA,<br><br>Defendant and Appellant. | B330930<br><br>(Los Angeles County Super. Ct. No. KA083187) |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General for Plaintiff and Respondent.

Christopher Kevin Santana appeals the trial court's order denying his petition for resentencing pursuant to Penal Code[1] section 1172.6. Following an evidentiary hearing, the trial court denied the petition because it found beyond a reasonable doubt that Santana was guilty of murder under sections 188 and 189 as amended effective January 1, 2019.

We affirm the trial court's order.

## FACTS[2]

### A.  *Prosecution Evidence*

On March 19, 2008, Santana, Christopher Stratis, and Victor Maurtua entered Michelle Hsu's residence on Cameron Avenue in Covina Hills. Christine Alegre and Magali Fernandez accompanied the three men but waited outside. Hsu dialed 911 at 11:40 a.m. As she spoke to the emergency operator, Santana fired multiple shots at Hsu, killing her. Santana targeted Hsu's house because he thought an ex-girlfriend who had "nice stuff" lived there and it would be an easy house to enter.

Following the murder, Santana, accompanied by the four others, drove to his house. Fernandez testified at trial that during the drive, Stratis made reference to the fact that "[Santana] shot her." Alegre testified that when they arrived at

---

[1] All further statutory references are to the Penal Code.

[2] The summary of evidence from Santana's trial is taken from the appellate opinion in his direct appeal, *People v. Santana* (Oct. 6, 2011, B227143) nonpub. opn. We have separately reviewed the underlying trial record.

2

Santana's residence, Santana exited the vehicle followed by Maurtua and then Stratis.  Stratis, who was the last of the men to get out, said, "[Santana] shot her."  A short time later, Alegre asked Santana, "Who did you shoot?"  Santana replied, "[S]ome bitch."

After Santana drove Alegre home, she asked him again what had happened.  Santana told her he went inside the house while Maurtua and Stratis were looking around the garage.  He heard someone on the telephone and he shot her.  During a recorded interview with a police detective, Fernandez said Santana told the others that "he shot [the victim]" because "she was talking on the phone" and "she wouldn't shut up"; he heard the victim on the telephone, followed her voice to her location, shot her first from the doorway, and then again at closer range.

A K–9 unit led law enforcement officers to several discarded items including latex gloves, blue surgical booties, bandanas, hooded sweatshirts, and a backpack.  The backpack contained, among other things, a ski mask and a loaded .40-caliber Glock firearm.  The ski mask contained Santana's DNA.  The cartridge casings and bullets recovered from the crime scene were fired from the Glock.  A pancake holster found underneath Santana's bed contained impressions that corresponded to the Glock.  Santana told a fellow inmate he committed a robbery and somebody died.  He said, ". . . I guess, she was on the phone and somebody blasted her."  Santana admitted he had touched the gun and that his fingerprints were "most likely" on it.

**B.    *Defense Evidence***

Santana testified it was Stratis and Maurtua's idea to burglarize a house. Santana was hesitant but they convinced him to participate. He put on his ski mask and entered the house. While in the house, Santana heard gunshots. All three men ran out of the house. As they escaped, Santana discarded his backpack, shirt and ski mask. Santana never intended for anyone to be shot nor did he shoot anyone. He did not know anyone who had lived in Hsu's house. Santana denied that the Glock was in his backpack when he discarded it. He implied Stratis and Maurtua must have put it there after he dropped the backpack.

## PROCEDURAL HISTORY

Santana was charged with special-circumstance murder with associated personal firearm use and gang allegations. At trial, the court instructed the jury on second degree murder, and two theories of first degree murder: (1) willful, deliberate, and premeditated murder; and (2) felony murder. The jury was also instructed on aiding and abetting. The jury found Santana guilty of first degree murder. In doing so, the jury was not required expressly to specify the theory of liability that it relied upon; it had only to sign the guilty verdict form for first degree murder, which stated: "We, the jury in the above-titled action, find the defendant, CHRISTOPHER KEVIN SANTANA, GUILTY of the crime of THE FIRST DEGREE MURDER OF MICHELLE HONG SUE, a human being, in violation of Penal Code [s]ection 187(a),

4

a Felony, as charged in Count 1 of the Information." However, the jury was also asked to return "true" or "not true" findings on several additional allegations, including as relevant here, the following: The jury found true the allegation that Santana committed the murder of Hsu while he, or an accomplice, was engaged in the commission of a burglary. (§ 190.2, subd. (a)(17).) The jury also found true the allegation that in the commission of the burglary Santana "personally and intentionally discharged . . . a handgun, which caused the death of [HSU] within the meaning of Penal Code [s]ection 12022.53[, subd.] (d).[3] Santana was convicted as charged and sentenced to life without the possibility of parole, plus a consecutive 25 years to life. The Court of Appeal affirmed the judgment.

In 2022, Santana filed a petition for resentencing pursuant to section 1172.6. The People opposed the petition on the basis that Santana entered Hsu's home, discovered her on the phone with a 911 operator, and shot and killed her. Assisted by appointed counsel, Santana filed a reply. Santana argued that although the jury was told that it could convict him of murder even if he was not the actual shooter, the verdict forms presupposed that he was the shooter and did not provide a way for the jury to find him guilty as a mere participant.

---

[3] At the time of the verdict, section 12022.53, subdivision (d), provided: "[A]ny person who, in the commission of a felony specified in subdivision (a), [s]ection 246, or subdivision (c) or (d) of [s]ection 12034, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in [s]ection 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

5

The court held an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). Both parties relied on the record, including evidence adduced at trial, without introducing new or additional evidence. The court found that, based on the evidence presented at trial, Santana would still be guilty of murder under the current laws because the evidence demonstrated beyond a reasonable doubt that Santana was a major participant who acted with reckless indifference in the underlying burglary, he had the intent to kill, and he was the actual killer.

## DISCUSSION

### A.  *Legal Principles*

"Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) ' "Under the felony-murder doctrine as it existed at the time of [Santana's] trial, 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " ' " (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1199.)

The felony murder rule was amended by Senate Bill No. 1437 (2017-2018 Reg. Sess. (Stats. 2018, ch. 1015), which became effective on January 1, 2019. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 965.) "As relevant here, Senate Bill No. 1437 limited the class of persons liable for felony murder by adding section 189, subdivision (e). Under current law, '[a] participant in the perpetration or attempted perpetration of [certain

6

enumerated felonies, including burglary] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2.'  (§ 189, subd. (e)(1)–(3).)"  (*Ibid.*)

" 'Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief.  [Citations.]  Under section 1172.6, the process begins with the filing of a petition declaring that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189" made by Senate Bill 1437. [Citation.]  The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief.  [Citation.]  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]" [Citation.]'  (*People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. omitted.)"  (*People v. Bodely*, *supra*, 95 Cal.App.5th at p. 1200.) Where the petitioner has made a prima facie showing of entitlement to relief, the court issues an order to show cause setting an evidentiary hearing.  (§ 1172.6, subd. (c), (d)(1) & (3).)

"At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to [s]ection 188 or 189 made effective

7

January 1, 2019." (§ 1172.6, subd. (d)(3).) The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (*People v. Clements* (2022) 75 Cal.App.5th 276, 296–297.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) We review the trial court's factfinding on the question of whether a defendant committed a murder under a still-valid theory for substantial evidence. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 298.)

**B.    *Analysis***

On appeal, Santana contends there is insufficient evidence in the record to support one of the court's findings denying him relief under section 1172.6: specifically, he argues that the evidence was insufficient to support the finding that he intended to kill Hsu.[4] We affirm the court's order because Santana is ineligible for relief as a matter of law. Alternatively, we affirm

---

[4] We note that Santana's effort to limit the issue on appeal to whether there was substantial evidence of intent, even if correct, would not result in reversal. Santana ignores that our review of the denial of his petition under section 1172.6 must consider whether there is substantial evidence to support his conviction under current law on any of the theories presented. Even if Santana successfully challenged the trial court's finding that he acted with intent to kill, to prevail on appeal he would also need to demonstrate that the evidence was insufficient to support a conviction on the basis that he was guilty of felony murder, both as an actual killer and as a major participant who acted with reckless indifference to life.

8

on the basis that the trial court's findings are supported by substantial evidence. The jury's findings demonstrate that it found him guilty of felony murder as the actual killer, a theory of liability that remains viable after the January 1, 2019 amendments to section 188 and 189. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 965; § 189, subd. (e)(3).)

The verdicts demonstrate that the jury found Santana guilty of felony murder because it found true the special circumstance that he committed the murder during the commission or attempted commission of a burglary (§ 190.2, subd. (a)(17)). Additionally, the jury found true a firearm use allegation under section 12022.53, subdivision (d). Although that allegation may be found true if a person "in the commission of a [specified felony, including burglary], personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in [s]ection 12022.7, or death, to a person other than an accomplice" (§ 12022.53, subd. (d)), in this case the jury was not instructed so broadly. Rather, the trial court instructed under CALCRIM No. 3149 that if the jury found Santana guilty of first degree murder it must then decide whether the People proved the additional allegation that Santana "personally and intentionally discharged a firearm during that crime causing death." The jury found the allegation true. Specifically, the verdict form stated that the jury found Santana "personally and intentionally discharged a firearm, to wit, a handgun, which caused the death of MICHELLE HONG HSU." A defendant who, in the commission or attempted commission of a burglary, actually kills another is still guilty of murder, regardless of the defendant's mental state. (*People v. Garcia*, *supra*, 82 Cal.App.5th at p. 965; § 189, subd. (e)(3).) As the

shooter and actual killer of Hsu, Santana is ineligible for resentencing under section 1172.6.

Alternatively, the trial record presented at the section 1172.6, subdivision (d)(3) hearing contains substantial evidence to support the court's finding that Santana was the actual killer. That evidence included bullets and casings recovered from the scene of the murder that were fired from a Glock found in Santana's backpack; a pancake holster recovered from under Santana's bed that showed an impression of that same gun; Santana's statement to a jail house informant that he thought his fingerprints were on the gun; Santana's statements to Alegre and Fernandez that he shot Hsu, and his reasons for doing so.

## DISPOSITION

We affirm the trial court's order denying Santana's petition for resentencing pursuant to Penal Code section 1172.6.

NOT TO BE PUBLISHED.

MOOR, J.

I CONCUR:

KIM, J.

10

The People v. Christopher Santana
B330930


BAKER, Acting P. J., Concurring


I agree substantial evidence—chiefly, defendant's own admissions to Magali Fernandez, Christine Alegre, and another inmate—supports the trial court's finding that defendant is Michelle Hsu's actual killer and thus ineligible for Penal Code section 1172.6 relief.


BAKER, Acting P. J.